■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMMIE HILL, Appellant.—Judgment of the Supreme Court, New York County (Irving Lang, J.), rendered September 3, 1986, convicting defendant, after jury trial, of grand larceny in the second degree and fraudulent accosting and sentencing him, as a second felony offender, to concurrent indeterminate prison terms of from 2½ to 5 years and one year, respectively, unanimously affirmed.

Complainant's eyewitness testimony established that she was the victim of a confidence scheme whereby defendant and his two cohorts defrauded her of approximately $4,850 in savings. Defendant's two accomplices approached the 64-year-old complainant on the street and inquired whether she had dropped the wallet they had purportedly found. Complainant was led to believe that the wallet contained $100,000 in cash. Defendant's two accomplices convinced her that she could share in the found money if she would produce her cash savings so that the serial numbers of her cash bills could be compared to those of the found money to see if they matched. Complainant was told that if the serial numbers matched, she could receive a share of the found money.

Complainant was eventually led to a car parked half a block away. Defendant was sitting in the driver's seat. Complainant

was directed to sit in the front passenger seat and defendant's two accomplices sat in the rear seat. For the next four hours, defendant's accomplices did the substantive talking and handling of money while defendant drove them from Manhattan to complainant's Queens apartment, and then back to Manhattan to complainant's bank. Defendant alone escorted complainant into her bank where she withdrew cash pursuant to the directions of one of defendant's cohorts. During the cash withdrawal, defendant stood right behind complainant at the teller's window.

Complainant then brought the cash back to the car and handed it to one of defendant's cohorts. Pursuant to instruction, complainant reentered the bank on the belief that her share of the found money had been left there. When she came out of the bank, empty-handed, she found that the car and its occupants had gone.

Notably, complainant recalled that defendant gave no response when a cohort of his stated in the car that defendant's share of the found money would be "a little more" than the others.

Contrary to defendant's argument on appeal, complainant's eyewitness testimony constituted direct evidence which, when viewed in the light most favorable to the People (see, People v Malizia, 62 NY2d 755, 757, cert denied 469 US 932), sufficiently established defendant's mental culpability as to the crimes charged (see, People v Carter, 155 AD2d 276). The fact that defendant did not verbally mislead complainant or receive money in her presence does not establish that he had no interest in defrauding complainant (see, People v Serra, 104 AD2d 66, 68-69).

Defendant's further claim that a suggestive showup conducted by the police tainted complainant's in-court identification of defendant is without merit. The hearing court, while suppressing the showup identification, properly found that complainant's daytime observation of defendant (for approximately four hours) provided a sufficient, independent source to permit her to positively identify defendant in court. The totality of the evidence demonstrates that complainant was not influenced by intervening suggestive police procedures and that she was capable of identifying defendant on the basis of her independent recollection (see, People v Reeves, 49 AD2d 537). Indeed, complainant was able to identify defendant in court at the hearing even though defendant's hair color had changed since the time the showup was conducted. Concur—Murphy, P. J., Sullivan, Carro, Milonas and Rubin, JJ.