■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCISCO RIVERA, Appellant.—Judgment of the Supreme Court, Bronx County (Bernard Fried, J., at plea and sentencing), rendered on September 30, 1988, convicting defendant,

after a plea of guilty, of robbery in the second degree and sentencing him to an indeterminate term of imprisonment of 7½ to 15 years, is unanimously affirmed.

Two officers were told by an unidentified person that it appeared that a man was about to be robbed by two other males who had chased him into the subway. It was 4 o'clock in the morning. The two officers immediately went over to the subway entrance. They there encountered two men, the defendant and codefendant, who were emerging from the subway entrance.

The police officers stated they heard the sound of a metal object being dropped. One officer asked the two men to show their hands, whereupon they discovered the defendant had a wallet in his hand. When the officer approached the defendant to inquire about the wallet, he was shoved against the side of the subway stairwell by the defendant. The other officer drew his gun and told the defendant to stop struggling or he would be shot. A knife was recovered on the stairwell near the defendant's feet.

Soon thereafter, the complainant appeared with two transit officers and identified the defendant and codefendant as the men who robbed him. The transit officers subsequently arrested the defendant and codefendant. A wallet, $60, and the watch belonging to the complainant were recovered.

Following the denial of his motion to suppress, the defendant pleaded guilty to robbery in the second degree.

Defendant argues on appeal that the motion to suppress should have been granted as there was no reasonable suspicion on the part of the police officers to stop the defendant and codefendant. We do not agree.

Under the common-law right of inquiry, the right to stop and inquire is activated when police have a founded suspicion that criminal activity is afoot. Such a suspicion arises when there is an articulated and present indication of criminality based on observable conduct or reliable hearsay information. (*People v Taveras,* 155 AD2d 131.)

Here, the police had been alerted by an unidentified citizen that a man was going to be robbed by two men who had chased him into the subway. The police at this point had a sufficient basis to stop and inquire of the two men who they saw emerging from the subway. A corollary of the right to stop and inquire is the right to stop and frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed. (CPL 140.50; *People v*

*De Bour*, 40 NY2d 210, 223.) The sound of dropping metal alerted the officers to the possibility of a weapon. Whereupon, they asked the two men to see their hands. The further observation of the wallet in the defendant's hand provided an even further basis to detain the defendant and inquire about the wallet. The police had more than a reasonable suspicion to stop and detain the defendant and codefendant after the defendant pushed Officer Gordon against the side of the subway entrance. *(See, People v Brimmage,* 161 AD2d 379.)

The stopping of the defendant quickly evolved from one of a common-law right of inquiry, based on founded suspicion, to one of reasonable suspicion allowing the officers to stop and detain the defendant and codefendant. This evolution resulted from the defendant's own actions.

Accordingly, the court was correct in denying the defendant's motion to suppress the physical evidence. Concur—Murphy, P. J., Ross, Carro and Rosenberger, JJ.